**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| SCOTT TERRILL HOLDEMAN,    ) | |
|        ) | |
|        Plaintiff,    ) | |
|        ) | |
| v.    ) | Case No. 4:18-CV-00916-NKL |
|        ) | |
| ANDREW M. SAUL,    ) | |
| Commissioner of Social Security    ) | |
| Administration,    ) | |
|        ) | |
|        Defendant.    ) | |

**ORDER**

Plaintiff Scott Terrill Holdeman appeals the Commissioner of Social Security's final decision denying his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. For the reasons set forth below, the Court reverses and remands to the Commissioner for further proceedings.

I.    **Background**

Holdeman alleges that he became disabled on 12/27/2015 following an injury while working as a plumber. Holdeman alleges that this injury exacerbated his preexisting injuries, and in conjunction with a diagnosis of lupus and aggravation of his mental impairments, he is now unable to return to work. He filed his initial applications for disability insurance and SSI benefits on 5/13/2016. The ALJ held a hearing on 1/17/2018 and subsequently issued a decision denying benefits on 3/6/2018. The Appeals Council declined review in a letter dated 9/17/2018. Holdeman appealed to this Court.

### A. Medical History

Holdeman's disability claim is based on limitations resulting from degenerative joint disease of the bilateral knees, degenerative joint disease of the right shoulder, history of bilateral carpal tunnel release, lupus erythematosus, alcohol abuse, depression, somatic symptom disorder, anxiety, and post-traumatic stress disorder. Holdeman had previously been involved in two Worker's Compensation cases: a lower back injury in 1995 and an injury to his shoulder in 2010. Holdeman was able to return to work following the first two injuries, but has not worked since his December 2015 injury. He alleges that he was at work lifting a heavy object when he felt a pop in his left knee and spasm in his lower back, resulting in pain radiating from his lower mid-back to the right side and tingling in his right foot. Tr. 572.

Prior to his last workplace injury, Holdeman saw Dr. Scholsberg, a psychologist, on 7/31/2015 for evaluation and treatment of post-traumatic stress disorder. He was given a PTSD checklist (civilian version, PCL-C) and scored below the cutoff for PTSD with a score of 24. Holdeman complained of unstable mood, anger, agitation, and rage following his father's death in 2012, accompanied by suppressed appetite, sleep disturbances, decreased energy, and anxiety. Consistent with possible bipolar II disorder, Holdeman was offered individual therapy and substance abuse treatment was recommended. Tr. 374.

On 12/15/2015, Holdeman had a punch biopsy taken for diagnosis related to multiple facial lesions and raised and scaling pink plaques. Tr. 337. Pathology results indicated discoid lupus erythematosus, and Doxycycline was prescribed. Tr. 338–339.

Following his work injury, Holdeman saw Dr. Arthur Ziporin on 12/28/2015 for lumbar strain. Tr. 566. An examination revealed lumbosacral tenderness at L3-L4, flexion to 30 degrees, extension to 10 degrees, bilateral side bending to 15 degrees, and negative straight leg raise. He

was prescribed Flexeril and referred to physical therapy. Holdeman returned to Dr. Ziporin on 12/31/2015 and 1/8/2016 with complaints that his pain was not better. Exam findings and work restrictions remained the same after both visits. Tr. 576, 579.

Holdeman received physical therapy treatment on 1/4/2016, 1/6/2016, and 1/8/2016 but was unable to tolerate therapy due to exacerbation of his symptoms, resulting in discontinuation in treatment. Tr. 588, 584, 582.

A 1/14/2016 MRI of Holdeman's lumbar spine showed mild degenerative disease at L4-L5 and L5-S1 with facet DJD at L5-S1 resulting in mild left greater than right foraminal narrowing, as well as a broad-based disc bulge at L4-L5 and L5-S1 approaching the central L5 and S1 nerve roots without significant mass effect or displacement. Tr. 569–570.

On 1/28/2016, Holdeman was examined by Dr. Fermin Santos. The examination revealed full range of motion, mild pain with lumbar flexion and extension, and focal tenderness along L2-L3 paraspinal musculature bilaterally, and physical therapy was ordered. Tr. 612, 616.

On 1/29/2016, Holdeman had a physical therapy evaluation for his lower back pain, and treatment was planned twice weekly for four weeks. Tr. 646. Holdeman subsequently returned to physical therapy for treatment over seven visits, but with minimal change to his range of motion, strength, and functional capacities. Tr. 657.

A 2/25/2016 examination by Dr. Santos revealed full range of motion, mild pain with lumbar flexion and extension, and focal tenderness along L2-L3 paraspinal musculature bilaterally, resulting in diagnoses which included acute chronic low back pain now localized to L2-L3, lumbar strain, mild degenerative lumbar disc disease, and resolution of lumbar radiculitis. Tr. 612. Two weeks of physical therapy followed by two weeks of work conditioning was ordered. Holdeman attended four additional physical therapy visits before beginning the work conditioning program.

The conditioning program was set to be for three to four visits weekly for two weeks. Holdeman's back symptoms were noted as improving overall, but bilateral knee and ankle pain caused functional limitations and continuation of treatment was not recommended. Tr. 681.

A 3/24/2016 examination by Dr. Santos revealed full range of motion, mild pain with lumbar flexion and extension, and focal tenderness along L2-L3 paraspinal musculature bilaterally. Tr. 607. Holdeman was considered at maximum medical improvement and was returned to full duty work status. Tr. 608.[1]

On 6/13/2016, Holdeman was examined by Dr. Dorzab. Holdeman complained of being more depressed with anxiety and feelings of anger and nervousness. Dr. Dorzab prescribed Prilosec, Paxil, and Xanax. Tr. 379. Holdeman was examined again by Dr. Dorzab on 11/1/2016, revealing mild swelling of both knees with bilateral crepitus, limp favoring left leg, increased warmth of both knees, slight lateral swelling of ankle, and that Holdeman was not taking Paxil on a regular basis. He was instructed to take his medication regularly, and braces were ordered. Tr. 923.

### B. Expert Opinions

Dr. G.L. Pacci opined, based on a 6/14/1996 examination following a 9/15/1994 work injury resulting in low back pain, that chronic lumbar strain could be permanent and produce permanent work restrictions. Tr. 393. Dr. Pacci noted that an MRI had confirmed signs of discopathy at L4 and L5 interspaces, which could be explained by intermittent irritation of the

---

[1] The "Plan" section in Dr. Santos's 3/24/2016 medical report stated the following:
Plan:
1. I've nothing else [sic] offer him at this time.
2. Work status: Full duty.
3. He is considered at MMI with regards to his back.
. . .
Tr. 608.

thecal sac and mild traction of the nerve roots at the two intervertebral disc spaces L4-L5 and L5-S1. *Id.* The ALJ did not identify the weight given to Dr. Pacci's opinion.

On 3/29/16, Dr. Santos opined Holdeman's permanent partial disability rating with regards to the lumbar spine was zero percent, with no permanent restrictions. Tr. 856. Dr. Santos's examination noted that there was full range of motion, mild pain with lumbar flexion and extension, and focal tenderness along L2-L3 paraspinal musculature bilaterally. Tr. 607. The ALJ afforded Dr. Santos's opinion some weight.

State agency physician Dr. Altomari opined on 9/7/2016 that Holdeman had mild restriction of activities of daily living; mild difficulties maintaining social functioning; and mild difficulties maintaining concentration, persistence, or pace. Tr. 93. Dr. Altomari classified Holdeman's mental impairments as non-severe. Tr. 94. The ALJ afforded Dr. Altomari's opinion little weight.

Another State agency physician, Dr. Smith, opined that Holdeman was capable of lifting twenty pounds occasionally, ten pounds frequently; of sitting for six hours; of standing and/or walking for six hours; and of occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. Tr. 95–96. Dr. Smith also opined that Holdeman had postural limitations for never climbing ladders, ropes, or scaffolds; and environmental limitations in avoiding concentrated exposure to extreme cold or heat, wetness, humidity, vibration, fumes, odors, dusts, gases, pulmonary irritants, and hazards such as machinery and heights. Tr. 96–97. The ALJ afforded Dr. Smith's opinion some weight.

Dr. Koprivica opined in a worker's compensation opinion that the work injury on 12/27/15 was the direct, proximate, and prevailing factor in permanent injury in the lumbar region, though there was a strong component of Holdeman's disability presentation that was based on

psychological factors which would warrant formal mental health evaluation. Tr. 766, 782. Dr. Koprivica noted that Holdeman had difficulty on the left ring and little fingers associated with hypesthesia related to residuals from his digital nerve injuries. He had severe pain with Tinel's testing, and Phalen's was associated with pain in the left wrist. Tr. 774. Right shoulder pain was noted with resistance testing, and he had mild supraspinatus atrophy. There was significant pain with Hawkin's and subjective pain with shoulder girdle motion testing. Holdeman's range of motion in both shoulders was decreased. He had cervicothoracic pain with active motion testing, and his range of motion was decreased. Tr. 776. Lumbar motion was significantly limited. Tr. 777. There was severe midline lower back pain. Tr. 777. He was able to heel and toe walk; limped; and had severe pain in both ankles and knees. Tr. 778. He could squat with bilateral knee pain, and used a chair for assistance when squatting. Tr. 779. The ALJ afforded Dr. Koprivica's opinion little weight.

On 11/1/2016, Dr. Dorzab completed a physician's Residual Functional Capacity form assessment. Tr. 816–820. Using that assessment, Dr. Dorzab opined that Holdeman could lift 10 pounds frequently and 25 pounds at one time; that he could sit, stand, or walk for one hour at a time; and that during an eight-hour workday, he could sit for two hours and stand/walk for one hour. Dr. Dorzab further opined that Holdeman would need to lie down, recline, or elevate his feet for less than one hour total during a workday; that he is never able to bend, squat, crouch, crawl, kneel, or reach upward; and that he is occasionally able to stoop, climb a short climb of stairs, or maintain balance. Tr. 818. Dr. Dorzab also noted objective findings of limping favoring the right side, squirming in pain, shifting weight frequently, grimacing when going from sitting to standing, and marked weakness of the right leg. Tr. 819. The ALJ afforded Dr. Dorzab's opinion little weight.

Dr. Jackson completed a psychological evaluation of Holdeman on 2/22/17 and 2/27/17 specifically in relation to Holdeman's 12/27/2015 back injury. Dr. Jackson opined that Holdeman is permanently and totally disabled when the psychological and physical disabilities predating his work-related injury on 12/27/15 are considered in combination with his psychological and physical disability resulting from the 12/27/15 injury; and noted that he did not think Holdeman has the psychological stability to access or compete in the labor market in any capacity. Tr. 841, 842. Psychological testing indicated diagnoses of Somatic Symptoms Disorder, Major Depressive Disorder, and Alcohol Use Disorder. Tr. 835. Dr. Jackson further opined that as a result of the 12/27/15 injury, Holdeman's overall psychological disability is considered moderate, and the he suffers from mild impairment in activities of daily living, moderate impairment in social functioning, mild impairment in concentration, and marked impairment in adaptation. Tr. 840. The ALJ afforded Dr. Jackson's opinion little weight.

### C. The Hearing before the ALJ

During the January 17, 2018 before the ALJ, counsel for Holdeman asserted that he is disabled and cannot work due to a combination of physical and mental impairments, including knee and back pain worsened by a diagnosis of lupus. Tr. 64–65. Holdeman testified that he also experiences numbness and weakness in his hands as a result of carpal tunnel in his right hand, nerve surgery on his left hand, and having broken his left wrist. Tr. 67. He stated that this has limited his ability to lift weight or handle small items. Tr. 75–76. Holdeman stated that his ability to sit for long periods of time, stand, and walk are limited. Tr. 75. He stated he has issues adapting to change and communicating when working with others. Tr. 76–77. He also noted that as a result of his lupus, he suffers from fatigue, nausea, lesions, and hot and cold flashes intermittently. Tr. 70, 74. He stated that he can assist in doing laundry or washing dishes, but he has to be careful not

to drop them. Tr. 69. He dresses himself save for assistance when putting on boots, and he can take short drives. Tr. 69–70.

Susan Johnson testified as a Vocational Expert (VE) at the administrative hearing. Tr. 62. The ALJ posed three hypothetical questions. The first hypothetical assumed an individual of Holdeman's age, education, and past work experience. The individual could lift and carry about five pounds frequently, ten points occasionally in an eight-hour workday; could, with normal breaks, sit about six hours and stand and/or walk about two hours; requires a cane or walking stick to ambulate and maintain stability; should never climb ladders, ropes, or scaffolds; and should never work at unprotected heights, around dangerous machinery, or around extreme vibrations. Further, this individual can only occasionally reach overhead bilaterally; can only occasionally climb stairs, stoop, kneel, crouch, or crawl; and should never be required to power grip or power twist with either hand. This individual can follow simple instructions; perform simple, repetitive tasks; and occasionally interact with the public and with coworkers. Tr. 81–82. The VE testified that such an individual could not return to Holdeman's prior work as a plumber or composite plumber/craft foreman, but could perform the sedentary unskilled work of addresser, document preparer, and surveillance system monitor. Tr. 83. The ALJ noted that "the DOT or SCO does not differentiate between reaching in specific directions." Tr. 84. The VE confirmed that overhead reaching is not in the DOT or SCO, and instead asserted that the three identified jobs involve occasional overhead reaching based on her professional experience. Tr. 84. The VE also noted that use of a cane or walking stick would not be covered by the DOT. Tr. 84.

The second hypothetical was regarding an individual with all the limitations and abilities as in the first hypothetical, but that the individual would be off task twenty percent of the time. Tr.

83. The VE testified that those limitations would preclude that individual from employment, noting that while the DOT does not discuss off task time, her experience in doing job placement. Tr. 83.

The third hypothetical was regarding an individual with all the limitations and abilities as in the first hypothetical, but that this individual is further limited in that the can frequently, but not continuously handle and finger bilaterally. Tr. 87. The VE testified that such an individual could perform the same positions as in the first hypothetical despite the additional limitation, as a sedentary unskilled work of addresser, document preparer, or surveillance system monitor. Tr. 88.

### D. The ALJ Decision

The ALJ determined Holdeman suffered from severe impairments, including degenerative joint disease of the bilateral knees, degenerative joint disease of the right shoulder, history of bilateral carpal tunnel release, lupus erythematosus, alcohol abuse, depression, somatic symptom disorder, anxiety, and post-traumatic stress disorder. Tr. 22. However, the ALJ found that Holdeman was did not have a "disability" as defined in the Act, 20 CFR Part 404, Subpart P, Appendix 1, and concluded that he has the residual functional capacity:

> [T]o perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). He can left [sic] and carry 5 pounds frequently and 10 pounds occasionally. In an 8-hour workday with normal breaks, he can sit about 6 hours and stand and/or walk about 2 hours. He requires a cane or walking stick type device to ambulate. He should never climb ladders, ropes or scaffolds, and never work at unprotected heights or around dangerous machinery. He should not work around extreme vibration. The claimant can occasionally reach overhead bilaterally. He should never power grip or power twist bilaterally. He can frequently, but not continuously handle and finger bilaterally. He can occasionally climb ramps or stairs, and occasionally stoop, kneel, crouch and crawl. Due to his mental impairments, the claimant can follow simple instructions and perform simple, repetitive tasks. He can occasionally interact with the public and with co-workers.

Tr. 23.  Relying on VE testimony, the ALJ concluded that Holdeman was unable to perform any past relevant work, but there are jobs that exist in significant numbers in the national economy that he could perform.  Tr. 26–27.

## II.    Legal Standard

The Court's review of the ALJ's decision is limited to a determination of whether it is supported by "substantial evidence in the record as a whole."  *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015).  "Substantial evidence" is less than a preponderance but enough that a reasonable mind might find it adequate to support the ALJ's conclusion.  *Id*.  The Court must consider evidence that both supports and detracts from the ALJ's decision.  But as long as substantial evidence in the record supports the ALJ's decision, the Court may not reverse it simply because substantial evidence also exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015).

## III.    Discussion

Holdeman argues that the ALJ failed to sustain his burden at step five because he relied upon VE testimony in making his determination without sufficiently resolving apparent conflicts between the VE's testimony and the occupational descriptions in the DOT.

At step five the burden shifts from the claimant to the ALJ to show that there exists a significant number of jobs in the national economy that can be performed by a person with the claimant's RFC and vocational skills.  *Dipple v. Astrue*, 601 F.3d 833, 836 (8th Cir. 2010).  VEs are considered reliable sources of occupational evidence.  But when there is an apparent conflict between a VE's testimony and the occupational descriptions in the DOT, the ALJ is required to elicit a "reasonable explanation" to resolve the conflict before relying on the VE to support a

disability determination. SSR 00-4p (Dec. 4, 2000); *Moore v. Colvin*, 769 F.3d 987, 989–90 (8th Cir. 2014). Absent a reasonable explanation, VE testimony that conflicts with the DOT "does not constitute substantial evidence upon which the Commissioner may rely to meet the burden of proving the existence of other jobs in the economy a claimant can perform." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 (8th Cir. 2014).

At the hearing, the ALJ posed a hypothetical to the VE that included a limitation to occasional overhead bilateral reaching. Tr. 23. In responding to the hypothetical, the VE recommended three types of work that could be performed with that limitation: "addresser," "document preparer," and "surveillance system monitor." Tr. 83. However, the Selected Characteristics of Occupations Defined (SCO)[2], a companion volume to the DOT, lists "addresser" and "document preparer" as jobs requiring reaching "[f]requently," meaning that reaching "[e]xists from 1/3 to 2/3 of the time." *See* DOT 209.587-010, 1991 WL 671797 (Addresser); DOT 249.587-018, 1991 WL 672349 (Document Preparer). The VE testified that the DOT did not reference specific directions of reaching regarding these jobs and supported her conclusion that these jobs could be performed by someone limited to occasional overhead reaching solely by stating that her opinion was based on professional experience. Tr. 83.

Holdeman argues that he cannot perform the jobs identified by the VE due to his limitation to occasional—and therefore not frequent—overhead reaching, and that the VE testified inconsistently with the DOT. Defendant argues that the ALJ "specifically clarified that the VE's testimony regarding the need for overhead reaching was not specifically addressed in the DOT and

---

[2] *Moore*, 769 F.3d at 989, n. 2 ("Social Security Ruling 004–p dictates that '[i]n making disability determinations, we rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy.'").

that she relied on her professional experience with regard to that limitation." Doc. 16 (Defendant's Brief), at 18–19.

During the hearing, the ALJ and the VE had the following exchange:

Q:     The overhead reaching, the DOT or SCO does not differentiate between reaching in specific directions. They just use the term reaching.
A:     That is correct.
Q:     So, your testimony is that these three jobs would require more than occasional overhead reaching is based on your professional experience?
A:     Yes.
Q:     I'm not sure it's a departure from the DOT, but it's a little bit different.
A:     Yes.

Tr. 84. On its face, the transcript indicates that two of the jobs recommended by the VE "would require more than occasional overhead reaching," directly contradicting the "occasional overhead bilateral reaching" limitation included in the ALJ's hypothetical.  Thus, there is not substantial evidence in the record to support a finding that Holdeman could do the job of an "addresser" or "document preparer".  Even if the transcript was in error and should have read that the jobs did not require more than occasional overhead reaching, the VE did not sufficiently explain the basis of her opinion. The VE provided no personal observations or further explanation to support her conclusion that jobs requiring "frequent" reaching did not require more than "occasional" overhead reaching. Instead she offered a conclusory statement that her opinion was based on her experience.  Tr. 83. A VE's vague assurances that she relied on her professional experience does not alone serve as a reasonable explanation to resolve a conflict.  *See Coates v. Colvin*, No. 14-0843-CV-W-ODS, 2015 WL 4610991, at *2 (W.D. Mo. July 30, 2015). This is precisely the problem identified in *Moore v. Colvin*, 769 F.3d 987, 989–90 (8th Cir. 2014). Thus, even if there is an error in the transcript, there is not substantial evidence in the record to support a finding that Holdeman could do the job of an "addresser" or "document preparer".

Plaintiff's RFC also limited Holdeman to only "occasional interaction with the public and with co-workers." Plaintiff asserts that there was a conflict between the DOT job description and the VE's testimony which was not resolved as the SCO listing for "surveillance-system monitor" indicates that the position requires talking frequently. DOT 379.367-010, 1991 WL 673244 (Surveillance-System Monitor). Appendix C to the SCO defines talking as "[e]xpressing or exchanging ideas by means of the spoken word to impart oral information to clients or to the public and convey detailed spoken instructions to other workers accurately, loudly, or quickly." Defendant argues that unlike the frequent "talking" required of this job, the nature of the interactions in this position require only speaking and signaling, not more advanced interactions such as mentoring and negotiating, and that therefore there is no direct conflict between the VE's testimony regarding the "occasional interaction" limitation in the hypothetical and the SCO's requirement of "frequent talking." The Defendant further argues that the ALJ was therefore not required to explore any potential conflict since there is no "affirmative responsibility on the ALJ to inquire further when a VE merely testifies to information not included in the DOT, but that does not conflict with it." *Courtney v. Berryhill*, 894 F.3d 1000, 1003 (8th Cir. 2018).

The ALJ's RFC did not limit Holdeman to superficial versus advanced interactions. Rather, the limitation as stated in the RFC and used in the hypothetical to the VE featured only the broad term "interaction." Without evidence establishing that the frequent talking required in the DOT/SCO job description is distinguishable from the "occasional interaction" limitation in the hypothetical, there is an apparent and unresolved conflict between the VE's testimony and the DOT requirements. Thus, there is not substantial evidence to support a finding that Holdeman could be a "surveillance system monitor".

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record, free from legal error. *See Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015). Where, at Step Five, there is an apparent and unresolved conflict between the VE's testimony and the DOT, the VE's testimony "does not constitute substantial evidence upon which the Commissioner may rely to meet the burden of proving that the existence of other jobs in the economy a claimant can perform." *Moore*, 769 F.3d at 990. Therefore, the matter will be remanded.

Holdeman also claims that the RFC formulated by the ALJ is not based on substantial evidence in the record as a whole. Because this matter will be remanded to the Commissioner based on the ALJ's error at step five, the Court need not consider this argument. The ALJ should address these concerns regarding Holdeman's RFC on remand.

IV.    **Conclusion**

For the reasons discussed above, the final decision of the Commissioner denying benefits is REVERSED, and this cause is REMANDED to the Commissioner for further proceedings consistent with this opinion.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: November 6, 2019
Jefferson City, Missouri